IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES HOWSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-00034 |
| v. | ) | |
| | ) | JUDGE CAMPBELL |
| TOPRE AMERICA CORPORATION, | ) | MAGISTRATE JUDGE HOLMES |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the Court is Defendant Topre America Corporation's ("Topre") Motion for Summary Judgment. (Doc. No. 56). In support of the Motion, Defendant filed a memorandum of law (Doc. No. 58), and statement of facts (Doc. No. 57). Plaintiff James Howse filed a response in opposition (Doc. No. 62, 64), and a response to Defendant's statement of facts (Doc. No. 61).[1] Defendant filed a reply. (Doc. No. 65).

For the reasons stated herein, the motions for summary judgment will be DENIED.

### I. BACKGROUND

Defendant Topre is a metal stamping automotive parts supply company. (SOF ¶ 1). Plaintiff worked for Topre beginning in August 2020. (Pl. Ex. 1). He worked in the press department until March 2022, and then in assembly. (Pl. Ex. 2). Beginning in June 2022, his shift supervisor was Raynell Dillard. Plaintiff claims Dillard called him derogatory names roughly 300 times over the next six months, including "bitch ass nigga," "ho[] ass nigga," "fuck boy ass nigga," and "faggot." (Pl. Dep., Doc. No. 64-6 at 79). In addition, Dillard described the back of Plaintiff's pants as "dirty"

---

[1] For ease of reference, Defendant's statement of undisputed material facts (Doc. No. 57) together with Plaintiff's response (Doc. No. 61) will be cited as "SOF ¶__."

and asked if Plaintiff's boyfriend had done that. (*Id*.). Plaintiff states that he told Dillard that he was bisexual, that the names were offensive, and asked him to stop. (*Id*. at 113-114; Pl. Ex. 5 (handwritten amended interrogatory response)).

On August 11, 2022, Dillard issued Plaintiff a write-up indicating a verbal warning was issued for not properly signing off and submitting paperwork. (Pl. Ex. 7). On August 15, 2022, Jamie Patterson, who Plaintiff contends was close with Dillard, issued Plaintiff a write-up indicating a written warning was issued for failing to perform or ensure completeness of a quality check while Team Lead. (*Id*.). The August 15 incident took place in front a representative from Nissan, Topre's most important customer. (SOF ¶ 26). On February 11, 2023, Plaintiff emailed Rob Hall, a senior manager, stating that fellow team leads and supervisors are asking about the hostility between him and Dillard. (SOF ¶ 33; Doc. No. 56-4 at PageID# 899). He wrote, "If the hostility does not change then respectively [sic] Im going to have to turn in my 2 weeks notice." (*Id*.).

On March 8, 2023, Dillard issued Plaintiff a write-up indicating a written warning and suspension were imposed for entering a robot cell without following proper lockout procedures. (SOF ¶ 28; Pl. Ex. 7). Plaintiff acknowledges that this is a significant safety violation that is cause for immediate termination. (SOF ¶¶ 28, 29). On or around March 13, 2023, Plaintiff was moved from Dillard's supervision and placed under the supervision of Patrick Burd. (Pl. Ex. 2; Burd Dep., Doc. No. 56-8 at 11-12, 23.).

Plaintiff testified that he complained of the harassment to Rob Hall several times verbally and by email as early as March 2023, including telling him that Dillard was spreading rumors that Plaintiff was bisexual, sleeping with men in the parking lot, and that he felt Dillard had threatened

2

him. (Pl. Dep., Doc. No. at 120-25; *see also*, Pl. Ex. 9 (Feb. 11, 2023 email to Hall complaining of "hostility"). Hall responded by telling Plaintiff to stay away from Dillard. (*Id*. at 122). Plaintiff testified that Hall told him he did not have to include information about his sexuality in the written complaints "where everyone can see it" and that Hall told him to "just keep it between he and I." (Pl. Dep., Doc. No. 64-6 at 194). Plaintiff also stated that he told Carla Shields and Jamie Patterson about hostility between himself and Dillard, and that Dillard had called him "faggot" and was spreading rumors about Plaintiff's sexuality. (*Id*. at 117-120).

The hostility between Plaintiff and Dillard came to a head on May 19, 2023. Plaintiff claims Dillard "thrust his shoulder into [Plaintiff's] so as to intentionally cause an incident" and told Plaintiff "if it happens again im gonna whoop you're a$$ [sic]." (Pl. Ex. 11). Plaintiff reported the incident to Carla Shields, assistant manager in human resources. (*Id*.). The human resources manager took statements from Plaintiff, Dillard, and another employee. (SOF ¶ 38).

On June 2, 2023, Patrick Burd reprimanded Plaintiff for failing to resolve a quality issue on May 26, 2023. (Pl. Ex. 14). Plaintiff responded with his reasons for not handling the issue. (*Id*.). He added that "since [the] incident with [Dillard] my uncomfortablity level has skyrocketed and I find it hard to concentrate and do my job efficiently." (*Id*.). Later in the email chain, Plaintiff wrote, "I feel very targeted at this point … I feel that no one is taking ANY consideration of how this incident is affecting me … I just don't want any further harm or bashings to come my way." (*Id*.).

On June 2, 2023, Plaintiff was written-up after he failed a "red rabbit" test. A "red rabbit" is an unfinished part intentionally placed in a finished goods container as part of a quality control test to see if team leaders and supervisors would identify the defect. (SOF ¶ 45). Because this was Plaintiffs' fourth write-up in 12 months, he was recommended for termination. (*Id*. ¶ 50). The

3

termination decision was made by Plaintiff's chain of command reviewing the potential termination and supporting record and indicating their agreement with the decision by signing a "circle sheet." (*Id.*). The termination decision was made on June 5, 2023. (*Id.* ¶ 53). Dillard had no role in the red rabbit test, no role in the "circle sheet" review, and no role in the termination decision. (SOF ¶ 64). Before the termination was communicated to Plaintiff, he emailed Ms. Shields to resign, stating that his resignation was due to anxiety from the shoulder bump incident with Dillard. (*Id.* ¶ 54).

Plaintiff claims Dillard created a hostile work environment due to Plaintiff's sexual orientation and that Defendant terminated his employment in retaliation for Plaintiff reporting the hostile work environment. He brings claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA") for discrimination based on sex and retaliation.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

4

Case 3:24-cv-00034    Document 70    Filed 07/31/25    Page 4 of 14 PageID #: 2834

In evaluating a motion for summary judgment, the Court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question for the finder of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence from which the finder of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

"The trial court may, however, exercise a sound discretion in denying summary judgment where, although the movant may have technically shouldered his burden, the court is not reasonably certain there is no triable issue of fact; where a portion of an action may be ripe for summary judgment but is intertwined with another claim(s) that must be tried; and in certain other situations." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (quoting 6 *Moore's Federal Practice* ¶ 56.15[8] (2d ed. 1985)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that it trial courts may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial") (citing *Kennedy v. Silas Mason Co.,* 334 U.S. 249 (1948)).

### III. ANALYSIS

**A. Discrimination Based on Sexual Orientation**

Defendant argues it is entitled to summary judgment on Plaintiffs claims under Title VII because, although Title VII prohibits discrimination against homosexual individuals, it does not prohibit discrimination against bisexual individuals. (Doc. No. 58 at 3). In support of this argument, Defendant points to the specific wording used by the Supreme Court in *Bostock v. Clayton County*. In *Bostock*, the Supreme Court held that discrimination based on sex included discrimination based on sexual orientation and stated that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* (*citing Bostock*, 590 U.S. 644, 660 (2020)). Defendant misleadingly asserts that this selective quotation is representative of the holding in *Bostock*. The Court refers to "sexual orientation" throughout the decision. *See e.g.*, 590 U.S. at 653, 654, 655, 662, 670, 671, 673. Moreover, the rationale of the decision provides no basis to conclude that discrimination against men who are attracted to men is impermissibly "based on sex," but discrimination against men who are attracted to men and women is not. Indeed, the Sixth Circuit has stated that *Bostock* "held that Title VII's prohibition against sex discrimination extends to discrimination based on sexual orientation." *Kilpatrick v. HCA Human Resources*, No. 22-5307, 2023 WL 1961223, at *2 (6th Cir. Feb. 13, 2023). Accordingly, the Title VII claim will not be dismissed on this basis.

Defendant also argues that Plaintiff's claims under the THRA must be dismissed because the THRA does not cover claims for sex-based discrimination based on sexual orientation. (Doc. No. 58 at 2). In support of this assertion, Defendant points to the definition of "sex" in Tenn. Code Ann. § 4-21-102(20), which has since been amended and is now found in Tenn. Code Ann. § 1-3-105(c). *See* 2025 Tenn. Pub. L. Ch. 471 (H.B. 910). As amended, the statute states: "As used in this code, unless the context otherwise requires, 'sex' means a person's immutable biological sex

6

as determined by anatomy and genetics existing at the time of birth and evidence of a person's biological sex." Defendant also points to "frequently asked questions" on a Tennessee government website. The website is no longer available, likely because the law referenced above also dissolved the Tennessee Human Rights Commission ("THRC") effective July 1, 2025. (Doc. No. 58 at 2 (citing https://www.tn.gov.humanrights/employment--housing--public-accommodations-faqs1.html)). Defendant represents, however, that the THRC website stated that "The THRA does not offer protection based on sexual orientation." (*Id*.). Finally, Defendant points to Tennessee Court of Appeals decision *Howe v. Haslam*, No. M2013-01790-COA-R3-CV, 2014 WL 5698877, at * (Tenn. Ct. App. Nov. 4, 2014). In that case the court considered a challenge to chapter 278 of the 2011 Public Acts, House Bill 600/Senate Bill 632 ("HB600"), which, among other things, amended the definition of "sex" in the THRA to "mean[] and refer[] only to the designation of an individual person as male or female as indicated on the individual's birth certificate" and prohibited local governments from imposing anti-discrimination laws that vary from those recognized by state law. *Id*. at *1-2. The *Howe* Court found that the Plaintiffs lacked standing to challenge the law and did not decide the merits of the challenge. *Id*.

Plaintiff does not directly respond to Defendant's argument concerning the scope of THRA, but notes that Title VII and THRA claims are evaluated under the same standard. (*See* Doc. No. 62 at 11 (citing *Jodry v. Fire Door Solutions, LLC*, No. 3:20-cv-243, 2020 WL 7769924, at *3 (M.D. Tenn. Dec. 30, 2020)). In *Jodry*, the court observed that the stated purpose of the THRA is "to provide for execution within Tennessee of the policies embodied in the federal civil rights laws" and that the analysis under the THRA and Title VII is the same. *Id*. (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)). Absent a clear indication that the

7

application of THRA is more limited that that of Title VII, the Court declines to dismiss the THRA claims on this basis.

### B. Employment Discrimination – Hostile Work Environment

To establish a prima facie claim of discrimination based on a hostile work environment, Plaintiff must show: (1) he is a member of a protected class; (2) he experienced unwelcomed harassment; (3) the harassment was based on sex; (4) the harassment created a hostile work environment; and (5) the employer is liable. *See Doe v. City of Detroit, Mich.*, 3 F.4th 294, 300 (6th Cir. 2021) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)).

Defendant does not dispute that there are genuine issues of material fact as to elements one through four. Defendant argues, however, that it is entitled to summary judgment because it "had a policy against harassment and Plaintiff failed to follow it," thereby entitling Defendant to the *Faragher-Ellerth* defense. (Doc. No. 58 at 3 (citing *Williams v. Memphis Light Gas & Water*, 2024 WL 3427171, at *7 (6th Cir. Jul. 16, 2024)). "For the defense to apply, the employer must demonstrate (1) 'that it exercised reasonable care to prevent and correct [the hostile work environment] promptly'; and (2) that the plaintiff 'unreasonably failed to take advantage of' [his] employer's corrective measures." *Williams*, 2024 WL 3427171 at *7 (citing *Thornton v. Fed. Exp. Corp.,* 530 F.3d 451, 456 (6th Cir. 2008). An employer may satisfy the first element by showing that it "promulgated an antiharassment policy with complaint procedure." *Id*. (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998)). Plaintiff does not dispute that Defendant had a policy against discrimination and harassment, that the policy established complaint procedures, or that Defendant trained employers on its policy. (*See* SOF ¶¶ 4-6).

At issue is whether Defendant has shown an absence of material fact concerning whether Plaintiff "unreasonably failed to take advantage of" the complaint procedures so that Defendant would have an opportunity to stop the alleged harassment. *Williams*, 2024 WL 3427171 at *7. Here, Defendant acknowledges that Plaintiff testified during his deposition that he complained about the harassment to Carla Shields, assistant manager in human resources, and Rob Hall, his senior manager, both of whom Defendant's policy designates for reporting harassment and discrimination. (Pl. Dep., Doc. No. 64-6 at 117-25; *see also* Pl. Ex. 9 (Feb. 11, 2023 email to Hall complaining of "hostility")). Defendant argues that Plaintiff's testimony is a "sham" and should not be credited because Plaintiff's interrogatory responses did not mention these reports, there is no record of emails other than the February 11, 2023 email, which does not specifically mention that the harassment is based on sexual orientation, and there is no evidence that Plaintiff made verbal reports of alleged sexual harassment. (Doc. No. 58 at 5-9). Defendant contends that this lack of corroborating evidence coupled with facts showing that Plaintiff was engaged to a woman, Plaintiff's sexuality was not widely known, and Plaintiff deleted a text message in which he referred to his bisexuality as a "secret" renders Plaintiff's deposition testimony concerning reports of the alleged harassment "lacking in credibility sufficient to survive summary judgment." (*Id*. at 8). In sum, Defendant argues that "no fair-minded jury could consider this overwhelming record and still believe Plaintiff's vague, equivocal, evolving, and uncorroborated accusations that he made an internal complaint specific to sexual orientation discrimination." (*Id*. at 9).

Plaintiff's does not respond to Defendant's argument that it is entitled to the *Faragher-Ellerth* defense. (*See* Doc. No. 62). But even without a direct response, summary judgment on the asserted affirmative defense is not warranted because there are questions of fact concerning

whether Plaintiff availed himself of Defendant's complaint procedures. At the summary judgment stage, the Court does not make credibility determinations or weigh the evidence and must consider all facts in the light most favorable to the Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Defendant asks the Court to do the opposite. Defendant's argument is particularly unpersuasive given that Defendant bears the ultimate burden of persuasion on the affirmative defense. See *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (stating that summary judgment should be granted on an affirmative defense only if the record establishes the defense "so clearly that no rational jury could have found to the contrary"). Defendant has not shown that no reasonable jury could find that Plaintiff availed himself of Defendant's complaint procedures. Therefore, summary judgment on Defendant's asserted affirmative defense under *Faragher-Ellerth* is not appropriate and will be denied.

Although not addressed by the parties, the Court also notes that the *Faragher-Ellerth* defense is not available if the harassment is by a supervisor and results in a tangible employment action. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 412 (6th Cir. 2021) ("If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.") (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Here, Plaintiff asserts the harassment by Dillon led to his termination and Defendant concedes there is a genuine issue as to whether Dillard would be considered Plaintiff's supervisor under *Vance v. Ball State Univ.*, 570 U.S. 421 (2013).

In a footnote in its reply brief, Defendant argues that Plaintiff did not plead tangible employment action harassment, and that Plaintiff has no evidence "that any tangible action … was an extension of Dillard's alleged verbal harassment and not a result of Plaintiff's performance." (Doc. No. 65 at 3, n.1). Generally, the Court does not consider substantive arguments made in a
10

footnote. *See In re RealPage, Inc. Rental Software Antitrust Litig.*, 709 F. Supp. 3d 469, 474 (M.D. Tenn. 2023) (finding party waived argument raised in a footnote). However, Plaintiff has pointed to sufficient evidence from which a jury could conclude that the alleged harassment by Dillon, which Plaintiff contends included unwarranted disciplinary action, culminated in his termination which was premised on having four disciplinary actions in 12 months. (*See* SOF ¶ 50). At this juncture, these remain issues for trial. Because this claim will proceed to trial, the Court does not separately consider whether Plaintiff's claim under Title VII based on a discriminatory adverse employment action survives summary judgment.

**C. Retaliation**

The retaliation claim is evaluated under the familiar *McDonnell Douglas* burden shifting framework whereby Plaintiff must first establish a prima facie case of retaliation by showing that (1) he engaged in protected activity; (2) the employer knew of the protected activity; and (3) the employer took an adverse employment action against him because of his protected activity. *Huang v. Ohio State Univ.*, 116 F.4th 541, 561 (6th Cir. 2024) (citing *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021)). An adverse employment action includes any conduct "that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Wyatt*, 999 F.3d at 419. The Plaintiff's burden at the prima facie stage is "minimal." *Id*. If Plaintiff establishes a prima facie case, the Defendant has a burden of production to articulate a non-retaliatory reason for the adverse employment action. (*Id*.). If the employer provides a non-retaliatory reason, the burden shifts to Plaintiff to prove that the proffered reason is pretext for retaliation. (*Id*. at 419-20).

11

Case 3:24-cv-00034    Document 70    Filed 07/31/25    Page 11 of 14 PageID #: 2841

Defendant argues Plaintiff cannot establish elements one and four of a prima facie case and cannot show its reason for termination was pretextual. Defendant's argument that Plaintiff has not engaged in protected activity mimics the argument raised with regard to the *Faragher-Ellerth* defense discussed above. Defendant contends that no reasonable jury could conclude that Plaintiff complained that Dillard's conduct toward him was due to Plaintiff's sexual orientation. For the reasons already discussed, the Court finds Plaintiff has established this element of a prima facie case.

Defendant next argues that Plaintiff cannot satisfy a prima facie burden of causation because there is no evidence that Hall shared Plaintiff's complaints with anyone else and Hall did not sign the "circle sheet" recommending Plaintiff's termination until after Plaintiff failed the "red rabbit" test which was approximately four months after Plaintiff first complained about Dillon. Defendant contends the temporal proximity between the February 11, 2023 email and the intervening event of Plaintiff failing the "red rabbit" test is insufficient to establish causation.

Defendant's argument ignores Plaintiff's testimony that he complained to Shields and Hall on multiple occasions, and that he reported the shoulder incident only weeks before he was terminated. Given Plaintiff's testimony that he made prior complaints about Dillon harassing him due to his sexual orientation, a reasonable jury could conclude that the additional complaints about Dillon were also protected conduct, in which case the termination was quite close in time. Construing the facts in the light most favorable to the Plaintiff, he has established the causation element of a prima facie case.

Having established a prima facie case, the burden then shifts to Defendant to provide a non-retaliatory reason for Plaintiff's termination. Defendant states that it terminated Plaintiff due

to performance after he failed a "red rabbit" test and had three prior disciplinary actions. (Shields Decl., Doc. No. 56-5, ¶¶ 14-15; "Circle Sheet," Doc. No. 56-4, at PageID# 929).

The burden is then on Plaintiff to show that the proffered reason was pretextual. Plaintiff "can show pretext in three interrelated ways: (1) [showing] that the proffered reasons had no basis in fact, (2) [showing] that the proffered reasons did not actually motivate the employer's action, or (3) [showing] that [the proffered reason was] insufficient to motivate the employer's action." *Bashaw v. Majestic Care of Whitehall, LLC*, 130 F.4th 542, 548 (6th Cir. 2025) (quoting *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 350–51 (6th Cir. 2021)). To survive summary judgment, Plaintiff must produce evidence that would allow a jury to reject the employer's stated reasons and infer that the real reason was retaliation. *Id.*

Plaintiff does not dispute that four legitimate disciplinary actions would be grounds for dismissal under Defendant's policy. (Doc. No. 61 at 15). He contends, however, that some of his disciplinary writeups were not legitimate and that if any of the four disciplines were not on his record, he would not have been subject to termination. (*Id*). Plaintiff asserts that he should not have been disciplined for the "red rabbit" test failure because the test requires two working badges and he did not have a working badge to initiate the test. (Pl. Dep. at 159-161). Plaintiff also points to evidence that at least one of his disciplinary actions was issued by Dillon and that others who engaged in similar conduct did not fact disciplinary action. (Doc. No. 62 at 15 (citing Smithson Dep., at 14-15 (stating that she had spoken to supervisors hundreds of times about team leads "having issues with their paperwork" and that it never resulted in discipline))).

Defendant argues Plaintiff has not presented evidence from which a reasonable jury could conclude that his termination was in retaliation for complaints about sex-based harassment. It notes

13

that a co-worker who failed the "red rabbit" test at the same time as Plaintiff also received disciplinary action. Moreover, of the six people who signed the "circle sheet" affirming Plaintiff's termination, only two of them, Rob Hall and Carla Shields, knew about Plaintiff's complaints about Dillon, and Defendant contends there is no evidence Hall or Shields were motivated to retaliate against Plaintiff. (*See* Doc. No. 65 at 5; Doc. No. "Circle Sheet," Doc. No. 56-4 at PageID# 929). Defendant also responds to Plaintiff's evidence that some of the discipline he received was not warranted by urging the Court not to act as a "super-personnel department" and explaining why, in its view, the discipline was valid. (*Id*.).

On this record, the Court finds Plaintiff has identified evidence from which a jury could infer that the real reason for his termination was retaliation for his complaints about Dillon. Accordingly, summary judgment on the retaliation claim is not warranted.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment (Doc. No. 56) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE